IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RANDE THORPE AND
VIRGINIA THORPE                                                                          PLAINTIFFS

V.                                                          CIVIL ACTION NO. 3:16CV00147-NBB-RP

WMS GAMING, INC.; BALLY GAMING, INC.;
SCIENTIFIC GAMES CORP.; CAESARS
ENTERTAINMENT CORP.; CAESARS
ENTERTAINMENT OPERATING CO., INC.;
BL DEVELOPMENT CORP.; HARRAH'S
TUNICA CORP.; HARRAH'S TUNICA
CASINO CORP.; TUNICA ROADHOUSE
CORP.; ROBINSON PROPERTY GROUP CORP.;
HORSESHOE GAMING HOLDING CORP.;
HORSESHOE GAMING HOLDING, LLC;
HORSESHOE GP, LLC; THE MISSISSIPPI
GAMING COMMISSION; AMESHA GROSS;
AND VARIOUS UNKNOWN CURRENT
AND FORMER EMPLOYEES OF
THE MISSISSIPPI GAMING COMMISSION                                       DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court upon the casino and game manufacturing defendants' motion to dismiss and upon the defendants Mississippi Gaming Commission and Amesha Gross' motion to dismiss and for qualified immunity. Upon due consideration of the motions, responses, and applicable authority, the court is ready to rule.

Factual and Procedural Background

The plaintiffs, Rande and Virginia Thorpe, traveled to Robinsonville, Mississippi,[1] in Tunica County in April 2013 to gamble at Caesars-owned casino properties.[2] The plaintiffs

---

[1] Robinsonville, Mississippi, is now known as Tunica Resorts, Mississippi.
[2] In April 2013 when the facts giving rise to this case occurred, the now Caesar's-owned properties were apparently owned by certain Harrah's entities.

played a video poker/keno machine manufactured and distributed by Bally Gaming, Inc. Sometime shortly thereafter, Caesars employees became aware of unusual activity related to these machines which were paying out unusually high amounts. Caesars reported the unusual activity to the Mississippi Gaming Commission ("MGC") and submitted an incident report and later notified Bally of the unusual activity. Bally began its own investigation into the matter while MGC agent, defendant Amesha Gross, began an investigation on behalf of the MGC.

As part of its investigation, the MGC submitted questions to Bally regarding the machines and the games' software on May 14, 2013. On June 27, 2013, Gross swore out an affidavit in support of an arrest warrant for the Thorpes, and a Tunica County judge issued the arrest warrant. The affidavits supporting the warrant, sworn to by Gross, charged the plaintiffs with violating Section 75-76-301(g) of the Mississippi Code, which makes it illegal "[t]o manipulate, with the intent to cheat, any component of a gaming device in a manner contrary to the designed and normal operational purpose for the component, including, but not limited to, varying the pull of the handle of a slot machine, with knowledge that the manipulation affects the outcome of the game or with knowledge of any event that affects the outcome of the game." Miss. Code Ann. § 75-76-301(g).

The plaintiffs assert that Bally and Caesars and the other casino defendants collaborated with the MGC and depended on information from each other, and that, in that sense, the investigations were not independent. They allege that the defendants gathered information, records, and evidence to submit to the MGC at the same time the defendants were accusing the plaintiffs of theft. The plaintiffs contend that Gross, the MGC, Bally employees, and Caesars employees conspired together to arrest, criminally charge, and indict the plaintiffs and that they initiated the issuance of the arrest warrant despite the fact that the investigations were still

pending, that the questions posed by the MGC had not yet been answered, and in the absence of any evidence of any illegal act having been committed by the plaintiffs. According to the plaintiffs, the criminal proceedings provided an avenue to the defendants to pursue civil forfeiture proceedings to attempt to recover their financial losses. They allege that Bally indemnified Caesars for $2,000,000.00 for the losses caused by the mis-programmed machines, and Caesars encouraged Bally to pursue forfeiture proceedings against the criminal defendants.

Bally later submitted its "summary of findings" and a letter to the MGC on July 24, 2013, advising that one cause of the unusually high payouts was an inadvertent coding error in the software supporting the gaming machines at issue. Though this report and letter are not currently part of the record in this case at this Rule 12(b)(6) stage of the proceedings, according to the plaintiffs, the report and letter concluded that Bally software engineers involved in the coding of the machines were unaware of the error, and there was no evidence that the engineers had any contact with the plaintiffs. The plaintiffs allege that despite this information and the alleged knowledge that the plaintiffs committed no illegal act, Gross and the MGC did not recall or quash the arrest warrants for the plaintiffs, and the defendants urged the MGC and Gross, among others, to continue the investigation and to charge, arrest, indict, and criminally prosecute the plaintiffs.

The plaintiffs learned of the warrants for their arrest in January 2014 and traveled to Mississippi to turn themselves in on or about January 22, 2014. The plaintiffs were arrested and detained and later indicted on February 3, 2014. The plaintiffs were indicted along with their acquaintance Randy Binning, who filed a similar action in this court arising from some of the same facts at issue in this case, but Binning asserted fewer claims against fewer defendants. *See Binning v. Bally Gaming, Inc.*, No. 3:16-cv-00146-NBB-RP, 2018 WL 296782 (N.D. Miss. Jan.

3

4, 2018). This court denied the defendants' motion to dismiss in that case but ultimately granted summary judgment.

The indictment claims that the plaintiffs "did unlawfully, willfully, and feloniously, claim, collect or take, United States currency, or anything of value from a gambling game without having made a wager contingent thereon, or to claim, collect or take any amount greater than the amount won." The plaintiffs alleged that Gross and the MGC's investigation as well as Bally and Caesars' investigations combined to form the basis for the indictment against the plaintiffs.

The plaintiffs assert that the defendants fraudulently misled the judge, grand jury, and prosecutors that the plaintiffs had committed theft and other criminal conduct by playing the machines. They further assert that the defendants deliberately withheld exculpatory information throughout this process. On June 30, 2015, the Circuit Court of Tunica County dismissed the charges against the plaintiffs finding as a matter of law that they had not committed any crime.

The plaintiffs filed the present action in this court on June 27, 2016, and their First Amended Complaint on November 14, 2016. The First Amended Complaint asserts §§ 1983 and 1985 claims for violations of the Fourth and Fourteenth Amendments as well as claims for malicious prosecution, negligence, and products liability.

Standard of Review

A complaint must contain a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Id.* But the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand,* 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly,* 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

In ruling on a Rule 12(b)(6) motion to dismiss, the court generally may not look beyond the pleadings. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Matters of public record and matters of which the court may take judicial notice as well as documents attached to the complaint are exceptions. *Id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2001).

Analysis

*Casino and Game Manufacturing Defendants' Motion to Dismiss*

The court will first address the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Caesars, Bally, and the other casino and game manufacturing defendants, beginning with the plaintiffs' Fourth and Fourteenth Amendment claims under Section 1983 and their claim for malicious prosecution. The defendants argue, inter alia, that the plaintiffs cannot succeed on any of these claims because a Tunica County judge and grand jury acted as independent intermediaries to break any chain of causation – that is, that probable cause cannot be deemed to be lacking due to the actions of these intermediaries. They further contend that the Section 1983 claims must fail because neither Caesars nor Bally is a state actor and because the plaintiffs have not alleged facts demonstrating a customary plan of concerted activity with a state actor.

The defendants argue that this court has already concluded in the aforementioned *Binning* case that Gross conducted an independent investigation and that the grand jury's indictment demonstrated probable cause, both of which preclude the 1983 claims as well as the claim for malicious prosecution. Throughout their motion, these defendants ask the court to consider its findings in the summary judgment opinion issued in the *Binning* case, arguing that district courts are allowed, under the 12(b)(6) standard, to consider certain documents outside the pleadings such as matters of public record. The court's *Binning* opinion is, of course, a matter of public record. The court declines this request, however, as to do as the defendants ask under the circumstances here would, in the court's view, unfairly sidestep the proper course of this litigation and hold the plaintiffs to a Rule 56 standard within a 12(b)(6) context. The *Binning*

case involved different parties, different claims, and different attorneys, and as mentioned, the plaintiff in *Binning* survived 12(b)(6) review, and the case properly proceeded to the discovery phase.

To establish a claim under 42 U.S.C. § 1983, a plaintiff has the burden of proving that a person or persons "acting under color of state law" deprived him or her "of a right secured by the Constitution and the laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). To subject a private business to liability under Section 1983, a plaintiff must show that law enforcement and the managers of the business were acting in concert with one another and that they "had a customary plan whose result was detention in [the] case." *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93, 94 (5th Cir. 1975); *see also, Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 748 (5th Cir. 2001). The Fifth Circuit has "established that a [private business] is not a state actor unless the conduct on the part of a[n] . . . officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the [private business] and was not accompanied by any independent investigation by the officer." *Morris*, 277 F.3d. at 749.

"One way a private citizen may be a state actor is if she 'is involved in a conspiracy or participates in joint activity with state actors.'" *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (citing *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005)). As the plaintiffs argue, the First Amended Complaint describes at length the alleged conspiracy between the private defendants and state actors to falsely accuse, commence, and continue criminal proceedings against the plaintiffs. The plaintiffs allege that Gross' investigation on behalf of the MGC was not independent – that the defendants actively participated in the investigation, feeding Gross, the judge, and the grand jury false information and urging the MGC to bring criminal charges against the plaintiffs for the purpose of recovering money they lost due to their own negligence.

7

The court finds that the plaintiffs have sufficiently alleged facts in accordance with the case law and under the 12(b)(6) standard that the defendants could be "state actors" and therefore potentially subject to liability under Section 1983. The court is satisfied, at this stage, that the "state actor" requirement should not bar the plaintiffs from proceeding to discovery on these claims.

As to the defendants' argument regarding the independent intermediary doctrine, such doctrine "applies only when all of the facts are presented and the intermediary's decision is truly independent of the wrongfulness of the defendant's conduct." *Melton v. Phillips*, 837 F.3d 502, 510 (5th Cir. 2016). "Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). According to the allegations of the First Amended Complaint, the defendants engaged in the precise conduct that constitutes a "taint exception" to the independent intermediary doctrine. "Under this exception, an independent intermediary's probable cause finding does not protect law enforcement officials whose malicious motive leads them to withhold any relevant information, or otherwise misdirect the magistrate or grand jury by omission or commission." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554-55 (5th Cir. 2016).

The court therefore finds that the defendants are not shielded by the independent intermediary doctrine at this 12(b)(6) stage of the litigation. The defendants offer this doctrine as a defense to the plaintiffs' Fourth Amendment claim and malicious prosecution claim, asserting that the doctrine works to negate the plaintiffs' argument that probable cause was lacking, a requisite element of both claims.

To state a claim for malicious prosecution under Mississippi law, the plaintiffs must sufficiently plead facts supporting each of the following elements:

(1) The institution of a proceeding;
(2) By, or at the insistence of, the defendants;
(3) The termination of such proceedings in the plaintiffs' favor;
(4) Malice in instituting the proceedings;
(5) Want of probable cause for the proceedings;
(6) The suffering of injury or damage as a result of the prosecution.

*Condere Corp. v. Moon*, 880 So. 2d 1038, 1042 (Miss. 2004).

In addition to the independent intermediary doctrine, which breaks the chain of causation relating to probable cause based on the actions of the judge and grand jury, the defendants argue that Gross' independent investigation precludes a malicious prosecution claim against Bally and Caesars because they did not institute the proceedings. This assertion is contested, however, and the court finds that the plaintiffs have adequately alleged that these defendants acted in concert with the casino and game manufacturing defendants and did, in fact, institute the proceedings at issue in this case. As noted earlier, the plaintiffs contend that Gross and the MGC's investigation was anything but independent.

The court next finds that the plaintiffs have sufficiently alleged a violation of Fourteenth Amendment due process. The Fifth Circuit has held:

> The [plaintiffs] clearly allege that [the defendant officer] conspired with others and intentionally lied in order to cover for his colleagues . . . . The [plaintiffs] further allege that [the defendant officer] and other officers' lies led directly to the decision to charge [the accused plaintiff] . . . . As we have explained, that is enough for us to determine that they have pled a clearly established constitutional violation.

*Cole v. Carson*, 802 F.3d 752, 774 (5th Cir. 2015), *vacated on other grounds*, 137 S. Ct. 497 (2016). This is precisely the conduct that the plaintiffs allege the defendants committed in the present case – that they conspired with Gross and the MGC to

9

knowingly falsely accuse the plaintiffs of illegally manipulating the gaming machines and that they hid the truth of the coding error by Bally and the fact the plaintiffs had no contact with the programming engineers – all for the purpose of attempting to recover money lost from the defendants' own negligence. The court finds that the plaintiffs' Fourteenth Amendment claim should survive 12(b)(6) review.

The court now turns to the plaintiffs' remaining claims against the casino and game manufacturing defendants, negligence and products liability. As the defendants note, the plaintiffs bring these claims for "negligence and/or products liability" in a single, one-sentence paragraph in the First Amended Complaint and attempt to support them with the same factual basis, though the claims are quite dissimilar. Negligence, of course, is established by common law and has four distinct elements: duty, breach, causation, and damages. *Ladner v. Holleman*, 90 So. 3d 655, 659 (Miss. Ct. App. 2012). Products liability claims in Mississippi are governed by the Mississippi Products Liability Act, which contains separate provisions for claims based on a defective design, manufacturing defect, and an inadequate warning. Miss. Code Ann. § 11-1-63; *R.J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 272 (Miss. 2005).

In support of their negligence claim, the plaintiffs assert that Bally and Caesars "owed a duty to refrain from prosecuting plaintiffs, alleging criminal conduct on the part of Plaintiffs, or instituting civil claims against Plaintiffs, resulting from the Plaintiffs' use of the defendant corporations' defective gambling machines." Doc. 18, p. 18. As the defendants argue, however, such is not a recognized duty under Mississippi law except to the extent that the requisite element of prosecuting without probable cause is incorporated into a freestanding malicious prosecution claim, an intentional tort, which the plaintiffs

have properly alleged and which this court herein determines should survive 12(b)(6) review. Without the essential element of a duty owed, the plaintiffs' negligence claim must fail, and no further analysis of the claim is necessary.

The plaintiffs allege a products liability claim under two theories – failure to warn and a manufacturing defect. They allege that the defendants "owed a duty to warn about the possibility of . . . criminal liability." This theory, while creative, is nonsensical. As the defendants note, "If this were true, all cars, guns, knives, even baseball bats would be required to come with a warning that 'use of this product could result in criminal liability.'" Doc. 39, p. 19. If criminal liability were found in a case arising from facts such as those asserted here, it would not be based on the product itself but instead on how the criminal actor illegally used and manipulated the game. Further, the plaintiffs' claim that defendants could be liable for improper criminal prosecution based on a manufacturing defect has no basis under Mississippi law. For these reasons, the plaintiffs' products liability claims are without merit and must be dismissed.

*The Mississippi Gaming Commission and Amesha Gross' Motion to Dismiss*

The plaintiffs concede that the MGC is immune from suit for federal or state claims in federal court but argue that the Mississippi Tort Claims Act ("MTCA") specifically waives Eleventh Amendment immunity for the state, and arms of the state, such that the plaintiffs can maintain a claim against the MGC in state court. Miss Code Ann. § 11-46-1 *et seq*. The plaintiffs therefore request that their claim against the MGC and Gross in her official capacity be dismissed based on a lack of jurisdiction and without prejudice. The MTCA, however, unequivocally provides that "[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts

guaranteed by the Eleventh Amendment to the Constitution of the United States." Miss. Code Ann. § 11-46-5(4). The court finds that the plaintiffs' claims against the MGC and defendant Gross in her official capacity should be dismissed.

The defendants also argue that defendant Gross is entitled to qualified immunity as to the plaintiffs' Section 1983 claims. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Once the defense of qualified immunity has been raised, the burden shifts to the plaintiff to rebut the defense as courts do "not require that an official demonstrate that he did not violate clearly established federal rights," rather, "our precedent places that burden upon the plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) (citing *Salas v. Carpenter*, 908 F.2d 299, 306 (5th Cir. 1992)).

Once a qualified immunity defense has been raised, the court must make two determinations. First, the court must determine whether the plaintiff has alleged or shown facts making out a violation of a constitutional right. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). If so, the court must then determine whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* (citing *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

It is well-settled that the right to be free from an unlawful arrest is a clearly established constitutional right. *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998). Here again, the defendants ask the court to consider its opinion in

*Binning*, where the court found Gross entitled to qualified immunity at the summary judgment stage of the litigation.  This court noted in *Binning*, however, that the plaintiff there failed to address the qualified immunity issue.  The court relied on Gross' affidavit and the defendants' presentation of the record in examining Binning's Fourth Amendment claim, as Binning had not submitted any argument or evidence on this claim in his response to the defendants' motion for summary judgment.  The plaintiffs in the present case, on the other hand, have not been afforded the opportunity to conduct discovery and develop evidence in support of their claims.  They have, however, alleged sufficient facts in the First Amended Complaint to dispute Gross and the other defendants' assertions surrounding the criminal investigation, presentation of the arrest warrant, and presentation to the grand jury.  Such was not the case in *Binning*.

The plaintiffs also allege that Gross was involved in the investigation that led to the MGC's decision in *RIH Acquisitions MS I, LLC d/b/a Resorts Tunica, et al. v. William Eleftheriou*, MGC No. 12-00316 (ND), Miss. Gaming Comm'n Hearing Examiner (June 24, 2013), a decision issued three days prior to the initiation of the arrest warrant of the plaintiffs in the present case, recognizing that a casino patron committed no illegal act in taking advantage of a slot machine error absent any connection or collusion between the player-patron and the technicians who created the reset error in the machine.  For these reasons, the court finds that defendant Gross is not entitled to qualified immunity at this stage of the litigation.  The defendants' motion to dismiss will therefore be denied in this respect.

## Conclusion

In accordance with the foregoing analysis, the court finds that the motion to dismiss filed by the casino and game manufacturing defendants should be granted in part and denied in part. The motion will be granted as to the plaintiffs' claims for negligence and products liability and will be denied in all other respects. The motion to dismiss filed by the MGC and Amesha Gross will also be granted in part and denied in part. The motion will be granted as to the MGC and Gross in her official capacity based on Eleventh Amendment immunity, and the MGC and Gross in her official capacity will be dismissed from this lawsuit. Gross' motion to dismiss based on qualified immunity will be denied. A separate order in accord with this opinion shall issue this day.

This, the 26th day of September 2018.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE